UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

TRACY S.,[1]                                                            Case No. 6:22-cv-00065-MK

               Plaintiff,                                             **OPINION**
                                                                        **AND ORDER**

    v.

COMMISSIONER, Social Security
Administration,

               Defendant.
_____

**KASUBHAI,** United States Magistrate Judge:

      Plaintiff Tracy S. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying her application for disability

insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has jurisdiction

to review the Commissioner's decision under 42 U.S.C. § 405(g). All parties have consented to

allow a Magistrate Judge to enter final orders and judgment in accordance with Federal Rule of

Civil Procedure 73 and 28 U.S.C. § 636(c). *See* ECF No. 15. For the reasons below, the

Commissioner's final decision is REVERSED and this case is REMANDED for additional

administrative proceedings.

_____

[1] In the interest of privacy, the Court uses only the first name and last name initial of non-
government parties whose identification could affect Plaintiff's privacy.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB in May 2019, alleging a disability onset date of August 15, 2018. Tr. 13.[2] Her application was denied initially and upon reconsideration. Tr. 73–81, 83–94. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held in February 2021. Tr. 113–14. On April 2, 2021, the ALJ issued a decision finding Plaintiff not disabled under the Act. Tr. 13–26. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1–6. This appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 54 years old on her alleged onset date. Tr. 73. The ALJ found that Plaintiff is capable of performing past relevant work as a clerical worker. Tr. 24. Plaintiff alleged disability based on several physical and mental impairments, including diabetes mellitus with neuropathy, ADD/ADHD, fibromyalgia, major depressive disorder ("MDD"), arthritis, meniscus tear in her left knee, and problems with her left shoulder and right knee. Tr. 219.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's]

---

[2] "Tr." citations are to the Administrative Record. ECF No. 14.

conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests on the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must prove an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of no less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that

the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*;
20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumed disabled; if not, the
analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to
determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related
activities that the claimant may still perform on a regular and continuing basis, despite any
limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e),
416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can
perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If
the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden
shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must
establish that the claimant can perform other work that exists in significant numbers in the
national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner
meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured requirements of the Act and had
not engaged in substantial gainful activity since his alleged onset date. Tr. 15. At step two, the
ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the
cervical spine, diabetes mellitus with neuropathy, and obesity. Tr. 16. At step three, the ALJ
found that Plaintiff did not have an impairment or combination thereof that met or medically
equaled the severity of a listed impairment. Tr. 19. The ALJ found that Plaintiff had an RFC to
perform light work with the following limitations:

> Plaintiff can lift and/or carry 20 pounds occasionally and 10
> pounds frequently. She can stand and/or walk for about six hours

> total in an 8-hour workday, and sit for about six hours total in an 8-hour workday. Plaintiff is never able to climb ladders, ropes, and scaffolds. She is frequently able to climb ramps and stairs, and is occasionally able to crawl. Plaintiff is occasionally able to reach overhead bilaterally, and she is frequently able to handle and finger bilaterally.

Tr. 19–20. At step four, the ALJ found that Plaintiff could perform past relevant work as a clerical worker. Tr. 24. The ALJ thus found Plaintiff was not disabled under the Act. Tr. 26

## DISCUSSION

Plaintiff asserts remand is warranted because the ALJ failed to give legally sufficient reasons for rejecting the medical opinion evidence, and consequently the RFC is unsupported by substantial evidence and the product of legal error.

## I.    Medical Opinion Evidence

As noted, Plaintiff challenges the ALJ's assessment of the medical opinion evidence. Pl.'s Br. 1, ECF No. 17.

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at *5867–68 (Jan. 18, 2017). The Ninth Circuit recently weighed in on the impact of the new regulations on existing Circuit caselaw. *See Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022).

Under the old regulations, in order to reject either a treating or an examining physician's opinion, ALJs were required to "provide 'clear and convincing reasons,' if the opinion [was] uncontradicted by other evidence, or 'specific and legitimate reasons' otherwise[.]" *Id.* In *Woods*, the Ninth Circuit held that "[t]he revised social security regulations [were] clearly irreconcilable with [its] caselaw according special deference to the opinions of treating and examining

physicians on account of their relationship with the claimant." *Id.* at 790. "Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations." *Id.* at 792.

Under the revised regulations, ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The two most important factors in doing so are the opinion's "supportability" and "consistency." *Id.* ALJs must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [their] decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2). With regard to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [their] medical opinion[], the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the "more consistent a medical opinion[] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

In crafting their disability determination decisions, the Ninth Circuit has instructed ALJs "to use these two terms of art—'consistent' and 'supported'—with precision." *Woods*, 32 F.4th at 793 n.4. Thus, even under the new regulations "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* at 792.[3]

---

[3] The new regulations also remove ALJs obligation to make specific findings regarding relationship factors, which include: the relationship with claimant; length of treating relationship; frequency of examinations; purpose of the treatment relationship; the existence of a treatment relationship; examining relationship; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(c)(3)–(5), 416.920c(c)(3)–(5); *Woods*, 32 F.4th at 792. However, a discussion of relationship factors may be appropriate where "two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "In that case, the ALJ 'will

Although *Woods* made clear that the hierarchy among physician's opinions no longer applies in this Circuit, the court did not address whether the new regulations upend the entire body of caselaw relating to medical evidence. The Court therefore concludes that the reasoning from cases unrelated to the treating physician rule remains good law. For example, it remains true that ALJs may not cherry-pick evidence in discounting a medical opinion. *See Ghanim*, 763 F.3d at 1162; *see also Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (reversing ALJ's selective reliance "on some entries in [the claimant's records while ignoring] the many others that indicated continued, severe impairment"). Nor may ALJs dismiss a medical opinion without providing a thorough, detailed explanation for doing so:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer [their] own conclusions. [They] must set forth [their] own interpretations and explain why they, rather than the doctors', are correct.

*Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (citation omitted). In other words, while the new regulations eliminate the previous hierarchy of medical opinion evidence that gave special status to treating physicians, ALJs must still provide sufficient reasoning for federal courts to engage in meaningful appellate review. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence); *see also Treichler v. Commissioner of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to

---

articulate how [the agency] considered the other most persuasive factors.'" *Woods*, 32 F.4th at 792 (citation omitted).

meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). With these principles in mind, the Court turns to the ALJ's assessment of the medical evidence.

## A.  March 2020, Opinion

The medical opinions at issue are that of Michael Laurie, M.D., who Plaintiff argues the ALJ improperly rejected. Pl's Br. 1. Dr. Laurie provided three treating source statements in March 2020, August 2020, and November 2020. Tr. 484–87, 490–94, 497–500, 593–99.

On March 10, 2020, Dr. Laurie provided a treating source statement concerning Plaintiff's physical and mental conditions. Tr. 593–99. On the statement, Dr. Laurie opined that Plaintiff could sit for eight hours, would only be able to stand/walk for one hour in an 8-hour workday, and that she would likely be absent from work once a month. Tr. 593–94.

The ALJ found Dr. Laurie's opinion regarding Plaintiff's limitation of standing and walking for one hour in an eight-hour workday unpersuasive because it is "unsupported by any accompanying narrative." Tr. 23. The ALJ then inaccurately observed that Dr. Laurie made no physical objective findings to support Plaintiff's limitations. *Id.*

The ALJ's findings are not supported by substantial evidence. In *Crane v. Shalala*, 76 F.3d 251 (9th Cir. 1996), an ALJ permissibly rejected three psychological evaluations completed via "check-off reports" because they "did not contain any explanation of the bases of their conclusions." *Id.* at 253; *see also Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012). However, if a check-box questionnaire is "based on significant experience . . . and supported by numerous records . . . [it is] entitled to weight that an otherwise unsupported and unexplained check-box form would not merit." *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014). *See also*, *Popa v. Berryhill*, 872 F.3d 901 (9th Cir. 2017) (as amended) ("[T]he fact . . . an 'other

source,' provided information in a Commissioner-supplied check-box form provides no reason to reject her opinions, much less a germane reason.") Dr. Laurie's treating source statements are check-box evaluations, that provide very little space for written explanations. Tr. 484–87, 490–94, 497–500, 593–99. However, the check-box evaluation is based on significant experience and supported by numerous records. Dr. Laurie has treated Plaintiff since 2010, and sees her every three to four months. Tr. 484. The records that support Dr. Laurie's treatment source statements include: (1) an electrodiagnostic study from June 2019 showing chronic, predominantly axonal, length dependent, sensorimotor polyneuropathy which is consistent with diabetic neuropathy, as well as electrophysiologically moderate bilateral median neuropathies at the wrists  (2) an MRI of her neck showing severe spinal stenosis with some foraminal narrowing (3) an examination revealing diminished sensation of the right C6-7 dermatomal pattern, and absent reflexes in right bicep, brachioradialis, and triceps Tr. 396, 427, 431. Given that the treatment source statement is based on significant experience and supported by numerous records, it is entitled to weight that an otherwise unsupported check-box form would not merit.

The ALJ's conclusion that Dr. Laurie made no physical objective findings to support Plaintiff's limitations is factually incorrect. Dr. Laurie noted that Plaintiff had significant disk issues with mobility as well as osteoarthritis of the cervical spine and hands. Tr. 648, 859. Dr. Laurie treated Plaintiff on multiple occasions for symptoms related to chronic back pain, osteoarthritis, ADD, and diabetes symptoms related to chronic back pain, osteoarthritis, ADD, and diabetes. Tr. 522, 555, 628, 648, 671, 733, 766, 839, 850, 822, 932, 942.

**B.  August 2020, Opinion**

On August 11, 2020, Dr. Laurie provided a second treating source statement concerning Plaintiff's physical and mental limitations. Tr. 490–500. Dr. Laurie listed more restrictive

limitations than he previously assessed in March 2020. *Id.* Unlike the March 2020 treating source statement, Dr. Laurie assessed manipulative limitations, restricting Plaintiff to rarely reaching overhead on the left, never doing so on the right, and only occasionally reaching in all other directions. Tr. 499. Dr. Laurie determined that Plaintiff would miss two days of work per month, and that she would need to recline for one hour during the workday. Tr. 497–98.

The ALJ found this opinion not persuasive, explaining that there is no support for Dr. Laurie's findings in his own treatment notes or the record, and he did not provide any accompanying narration to support his conclusions. Tr. 23–24. The ALJ discussed that the record reflects that Plaintiff is more active and social than she alleges. Tr. 24. The ALJ also wrongfully alludes to the idea that Dr. Laurie's opinion about Plaintiffs impairments is unpersuasive because Plaintiff did not stop working due to her impairments but stopped due to a merger and downsizing event where she received a severance. *Id.*

As discussed previously the lack of a narration to support conclusions on a check-box evaluation, is not an adequate reason to reject Dr. Laurie's opinion. The ALJ stated that the record reflects that Plaintiff is more active and social than she alleges, but the ALJ fails to cite to the record to support this conclusion. Tr. 24. Therefore, the ALJ's rejection of the opinion fails for lack of specificity. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 n.2 (9th Cir. 2006) (noting that without a "reference to the record" the court was left to speculate as to the ALJ's reasoning). Critically, the ALJ's decision failed to cite to any portion of the record in rejecting the doctor's opinion. *See* Tr. 24. As the Ninth Circuit has explained, to meet the specific and legitimate standard required to reject a contradicted doctor's opinion, an ALJ "must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 719, 725 (9th Cir. 1998) *see*

*also Beckett v. Comm'r, Soc. Sec. Admin.*, No. 3:09-cv-01052-JO, 2011 WL 4006644, at *2–3 (D. Or. Sept. 6, 2011) ("The Ninth Circuit repeatedly has explained that conclusory reasons will not justify an ALJ's rejection of a medical opinion[.]") (citation and quotation marks omitted). The ALJ failed to do so here.

Additionally, the reason as to why Plaintiff stopped working is not relevant when determining whether she suffers from mental and/or physical impairments, or whether Dr. Laurie's opinion is consistent with the record.

## C. November 2020, Opinion

On November 27, 2020, Dr. Laurie provided a third treating source statement concerning Plaintiff's physical and mental limitations. Tr. 484–88. The doctor assessed slightly more restrictive manipulative limitations than before, opining that Plaintiff could rarely reach overhead and occasionally reach in all other directions. Tr. 486. Dr. Laurie opined that Plaintiff could sit for less than one hour and could stand/walk for one hour within an eight-hour workday. Tr. 485. Dr. Laurie determined that Plaintiff would be off task over 25% of the workday and would miss up to three days of work per month. Tr. 484.

The ALJ found this opinion unpersuasive because Dr. Laurie did not provide a written narrative to explain why Plaintiff developed more serious mental and physical impairments since the previous opinion. Tr. 24. The ALJ found Dr. Laurie's opinion about Plaintiff's mental impairments to be unsupported by his own treatment notes where he described her as pleasant, cooperative, and having a normal affect. *Id.* The ALJ also discredited Dr. Laurie's opinion by noting that the treatment statement specifically states that the Plaintiff came to the clinic to fill out paperwork, and thus Dr. Laurie's findings are heavily based on Plaintiff's subjective symptoms and input. *Id.* The ALJ also explained that neither the Plaintiff nor her children

reported any substantial effect on her ability to perform her activities of daily living, and therefore the limitations opined by Dr. Laurie are inconsistent with the overall record. *Id.*

The ALJ's characterization of each of Dr. Laurie's opinions lack support in the record. As discussed previously the lack of a narration to support conclusions on a check-box evaluation is not an adequate reasoning for rejecting Dr. Laurie's opinion. Plaintiff presenting as pleasant and having a normal mental affect on examinations is not a valid reason to discredit the medical opinion regarding her mental health limitations. It is error to cherry-pick a few isolated instances of improvement in the medical record as a basis for concluding a claimant is capable of working. *Garrison*, 759 F.3d at 1017 (citation omitted).  It is common for mental health symptoms to wax and wane, such that cherry-picking the record for facts that support the non-disability decision while ignoring others to paint an inaccurate picture of the record as a whole is reversible error. "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms."  *Id.* (citing *Ryan. v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1195, 1200–01 (9th Cir. 2014). When assessing whether a claimant's reported activities are inconsistent with a provider's opinions, however, an ALJ errs where she fails to base such a determination on a holistic review of the record. *See id.* ("[A] holistic review of the record does not reveal an inconsistency between the treating providers' opinions and [the claimant's] daily activities."). Additionally, when an ALJ fails to develop a record with specific details about the claimant's childcare responsibilities, childcare responsibility alone cannot constitute "substantial evidence" for rejecting disability claims. *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (holding that the ALJ errred by failing to provide specific details about claimant's childcare responsibilities in rejecting the treating physician opinion). Childcare is comparable to caring for an elderly parent, and in Plaintiff's

case her role as a caretaker is rather minimal. She testified that she lives with her mother, drives her to appointments, cooks, and does basic household chores alongside her husband. Tr. 55–56. Plaintiff does not have to dress her or wash her, so the physical requirements in her part time caretaking role are minimal, and do not conflict with Dr. Laurie's opined limitations. *Id.*

As such, Plaintiff's activities of daily living were not a specific and legitimate reason to reject Dr. Laurie's opinion because the ALJ failed to take such a holistic view of the record here. *See Ghanim*, 763 F.3d at 1162 (holding that the ability to complete "some basic chores and occasionally socialize[]" is not a specific and legitimate reason to discount a doctor's opinion where a "holistic review of the record" showed the claimant "relied heavily on his caretaker, struggled with social interactions, and limited himself to low-stress environments").

## III.    Remand

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in

fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell*, 775 F.3d at 1141) (internal quotations omitted).

Here, the Court concludes that remand for additional proceedings is the appropriate remedy given Plaintiff's failure to address the credit-as-true standard and explicit request "that the Commissioner's decision be remanded for further administrative proceedings . . . ." Pl.'s Br. 20. Accordingly, this case is remanded for further administrative proceedings to: (1) conduct a *de novo* review of the medical opinion evidence; (2) obtain additional VE testimony based on a reformulated RFC; and (3) conduct any further necessary proceedings. *See Burrell*, 75 F.3d at 1141.

## CONCLUSION

For the reasons above, the Commissioner's decision was not based on substantial evidence. Accordingly, the Commissioner's decision is REVERSED and this case REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this <u>11th</u> day of April 2023.

<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge